# STATE OF MICHIGAN

# COURT OF APPEALS

In re BUTLER, Minors.

UNPUBLISHED
July 12, 2018

No. 341732
Wayne Circuit Court
Family Division
LC No. 00-392594-NA

Before: O'BRIEN, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to two minor children, CB and MB, under MCL 712A.19b(3)(g) (failure to provide proper care or custody) and (j) (reasonable likelihood the child will be harmed if returned to the parent). We affirm.

Respondent's nine-year-old son, JB, died while in his care. JB, a type I diabetic, had been vomiting for two days and had elevated blood-sugar levels. Nonetheless, respondent did not seek medical care and did not check his blood-sugar level the night before he was declared deceased. When the paramedics arrived in the morning, respondent was stumbling and smelled of alcohol. He later admitted to drinking a few beers and a pint of vodka. The subsequent investigation by Children's Protective Services (CPS) revealed that respondent's home was in deplorable condition; it was filthy, with roaches all over the kitchen and no working gas, and JB's bed lacked bedding. Photographs of the condition of the home were admitted into evidence.

The Department of Health and Human Services petitioned for termination of respondent's parental rights to his twin daughters, CB and MB. Respondent had placed them in the care of their paternal aunt, JLG, when they were two weeks old, and they had remained there ever since.[1] Respondent visited them once or twice a month, provided some financial assistance and food-assistance benefits, and cooperated in attending school meetings and some medical appointments. However, the arrangement was not a legal guardianship and JLG did not have legal authority over the children. The trial court terminated respondent's parental rights, finding that adoption by JLG was in the children's best interests.

---

[1] Their mother had had her parental rights terminated in 2012.

Respondent first argues that the trial court erred by concluding that a statutory ground for termination was established. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's finding that a ground for termination has been established is reviewed under the clearly erroneous standard. *Id.*; MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court terminated respondent's parental pursuant to MCL 712A.19b(3)(g) and (j), which, at the time of these proceedings,[2] provided:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent argues that there was no clear or convincing evidence to support the conclusion that he neglected JB's medical needs or that his drinking caused JB's untimely death.[3] CPS worker April Leahy's undisputed testimony was that respondent admitted that he had been drinking the day before his nine-year-old son died. Respondent informed her that he had consumed a few beers and a pint of vodka. Respondent admitted to Leahy that JB had been vomiting for two days, but respondent told Leahy that he thought this was a result of something

---

[2] MCL 712A.19b(3)(g) has since been substantively amended, effective June 12, 2018. See 2018 PA 58.

[3] In general, medical neglect and the parent's failure to make efforts needed based on a child's special needs support termination under MCL 712A.19b(3)(g) and (j). *In re LeFrance Minors*, 306 Mich App 713, 728-729; 858 NW2d 143 (2014).

JB had eaten. Respondent did not seek medical treatment for JB. He told Leahy that in the period before JB died, his blood sugar once measured 220 and, another time, 300. Respondent admitted that he failed to check JB's blood sugar before he went to bed on the night before the death. JB's medical records reveal that when the Detroit Fire Department arrived on the scene at approximately 8:29 a.m. the following morning, respondent was asked if he had checked JB's blood sugar, and he responded, "I don't know." JB's blood sugar at 8:31 a.m. measured 500. Respondent smelled of alcohol and was "unsteady" and "stumbling around the bedroom." At the hospital, when asked whether JB had any abnormalities the prior day, respondent "shook his head 'no.'" When asked if JB was normal when he went to bed, respondent nodded as if to say "yes."

As a whole, the record supports the trial court's conclusion that respondent's drinking affected his ability to care for his son. JB's medical needs as a type I diabetic were significant. Despite his two days of vomiting and elevated blood-sugar levels, respondent did not seek medical attention for his medically fragile child. Instead, during the nine-year-old's final hours, respondent drank so much that, the next morning, he smelled of alcohol and was stumbling.

While respondent argues that there was no evidence that he neglected or abused CB or MB and that they were being properly cared for by JLG, JLG indicated that she did not believe that respondent could meet the needs of the children on his own, and she confirmed that respondent never in fact *had* cared for the children on his own. In addition, his home was in a filthy, roach-infested condition. Moreover, and significantly, his failure to provide for JB's needs is probative of how he would treat his other children. "[H]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH,* 245 Mich App 77, 84, 627 NW2d 33 (2001) (quotation marks and citations omitted). Given the circumstances, the trial court did not clearly err by concluding that termination was warranted at least under MCL 712A.19b(3)(j).[4]

Respondent argues that the trial court erred in finding that termination was in the children's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). We review the finding for clear error. *VanDalen*, 293 Mich App at 139. When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90. "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846

---

[4] Given that respondent only visited the children once or twice a month and given the condition of his home, it is arguable that termination was also warranted under MCL 712A.19b(3)(g), but petitioner only needed to establish one ground to justify termination. *VanDalen*, 293 Mich App at 139.

NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court can consider include the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. *White*, 303 Mich App at 714. The trial court can also consider the likelihood that "the child could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

In deciding whether termination was in the children's best interests, the trial court weighed the children's strong bond with their aunt against the limited contact they had with respondent. JLG had been the children's sole caretaker since they were two weeks old. She took the children in because respondent asked for help. Respondent visited the children only once or twice a month, at his convenience, but after JB's passing, he did not visit even that often.

The trial court also considered the children's need for stability and permanency, noting particularly that CB needed someone who was attentive to her needs and could be relied on consistently.[5] JLG indicated that she wanted to adopt the children. She preferred adoption over guardianship because she took care of the children like her own daughters and considered them her own. She was already filling the role of their mother. She took the children to doctor appointments, while respondent would attend only the initial appointments and then authorize her to bring the children in for future appointments. While respondent was cooperative, JLG was the one making sure the children's needs were met. While respondent correctly notes that "a child's placement with relatives weighs against termination," *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), in this case, the trial court concluded that the children could best achieve needed stability through adoption as opposed to guardianship. Further, given the amount of time that the children had resided with their aunt—virtually their entire lives—it was not foreseeable that they would return home. JLG testified that it would not be in the children's best interests for them to live with respondent. The trial court made a reasoned decision and did not clearly err in finding that permanency through adoption was in the children's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Patrick M. Meter
/s/ Michael J. Riordan

---

[5] The court also noted that "[i]t's most important for those twins to stay together."